IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DEMARIO DONTEZ WALKER,                                              PLAINTIFF

V.                                          CIVIL ACTION NO. 1:19-CV-246-LG-RPM

JOHNATHAN HUNT, ET AL.                                            DEFENDANTS

### REPORT AND RECOMMENDATIONS

#### I.      Introduction

This matter is before the Court *sua sponte*.[1] On April 19, 2019, Walker filed a 42 U.S.C. §

1983 ("Section 1983") Complaint against defendants Johnathan Hunt ("Hunt"), Marshall Turner

("Turner"), and Burl Cain (collectively, "defendants') alleging violations of his civil rights. Doc.

[1]. For the following reasons, the Court recommends that Walker's IFP status be revoked and

Walker be prohibited from filing future lawsuits unless he meets a heightened pleading standard.

#### II.      Relevant Procedural History

On January 16, 2020, the Court conducted a *Spears* hearing, which Walker attended. *See*, *e.g.*,

Doc. [29]. After the hearing, the Court set various deadlines, including a discovery deadline that

was eventually extended to September 3, 2020. *See*, *e.g.*, Doc. [35]. On June 20, 2020, Walker

filed numerous discovery requests. *See* Doc. [44, 45, 46, 47, 48, 49, 64, 65, 66]. Unsatisfied with

the defendants' responses, Walker filed several discovery motions signed and dated September 2,

2020. Doc. [63, 72, 73, 74, 75, 76, 77, 78]. The Court extended discovery to enable Walker to

resolve any remaining disputes; however, discovery was otherwise closed. *Ibid.* Since the Court

---

[1] A prisoner's *IFP* status "may be revoked at any time if the court, either *sua sponte* or on a motion, determines that
the status was improvidently granted." *Davis v. Hernandez*, No. 3:12–CV–2013–L–BN, 2016 WL 335442, at *2 (N.D.
Tex. Jan. 5, 2016) (quotation omitted), *adopted*, No. 3:12–CV–2013–L, 2016 WL 320644 (N.D. Tex. Jan. 27, 2016).

found good cause to extend discovery, the defendants' motions for protective order brought on that basis were denied. *See* Doc. [94, 95, 151].

Subsequently, the defendants moved to extend discovery and limit its scope to qualified immunity because their summary judgment motion would be limited to that issue. Doc. [142, 145]. The defendants also observed that limiting the scope of discovery would enable them to provide relevant, focused responses without explaining, for example, the irrelevance of Walker's request for the admission that he needs diapers. *Ibid.* Notably, the defendants did not move to strike Walker's excessive discovery requests. Cf. Fed. R. Civ. P. 33(a)(1). Finding good cause, the Court extended discovery and only required the defendants to respond to qualified immunity-related discovery requests. Doc. [152], at 3–4. Complying with the Court's Order, the defendants provided Walker with a significant amount of discovery. Doc. [174, 175, 176, 177, 178, 179, 180, 181, 182]. While granting the defendants' above-described motion, the Court recognized that Walker did not have an opportunity to specifically object to the defendants' qualified immunity discovery. Doc. [152], at 3.[2]  To ensure fairness, the Court granted Walker leave to file a single Rule 37 motion. *Id.*, at 3–4. Consistent with the Court's Order, Walker filed such a motion. Doc. [188].

Since the defendants could not fully respond to Walker's voluminous discovery in a timely manner, the Court granted them additional time to respond and once again granted Walker leave to file a single Rule 37 motion in connection with this production. Doc. [184]. The defendants served Walker with their discovery responses, but Walker did not file a Rule 37 motion. Doc. [220, 221, 222, 223, 224, 225, 226, 227, 228].

Around this time, Walker filed multiple motions to amend the case caption to reflect that his new legal name was "Kiriyama Zyreonia San Givonni." Doc. [140, 157, 163, 208]. He attached a

---

[2] Before the Court issued its Order, Walker filed numerous motions. *See*, *e.g.*, Doc. [161, 164, 165, 167].

Lafayette County Chancery Court ("chancery court") order granting him such a name change. *Ibid.* Eventually, the Court hesitantly granted Walker's motions in full. *See Walker v. Hunt*, No. 1:19–CV–246–LG–RPM, 2021 WL 1792131 (S.D. Miss. May 5, 2021). At this time, the Court denied the defendants' motion to revoke IFP without prejudice because the defendants failed to present any new evidence suggesting that the Court's original IFP decision was improvident. Doc. [80, 245]. *See also Davis*, 2016 WL 335442, at *2. Nevertheless, the defendants subsequently moved the Court to reconsider its May 5, 2021 case caption order. Doc. [239]. In that motion, the defendants submitted a chancery court order rescinding its earlier name change order on the grounds that Walker committed a fraud on the court. *See id.*, Ex. 1. On December 20, 2021, the Court overruled its earlier Orders. *See Walker v. Hunt*, No. 1:19–CV–246–LG–RPM, 2021 WL 6048911 (S.D. Miss. Dec. 20, 2021).

In light of Walker's conduct as well as recent decisions by federal courts in Mississippi, the Court found it appropriate to reconsider its earlier IFP decision. Doc. [247]. Seeking greater uniformity with, *inter alia*, U.S. District Judge Glenn H. Davidson's recent forward-looking sanctions decision, the Court adopted his sanction and directed Walker to submit documentary support corroborating his Complaint allegations. *Ibid.* Walker filed timely responses. *See* Doc. [250, 251, 252]. This matter is now before the Court *sua sponte*.

### III.    Walker's Litigation History

#### A.  A Flood of Lawsuits

Walker has a long history of filing meritless lawsuits in federal court. In fact, his "pattern of filing innumerable cases . . . has continued unabated for years." *Walker v. Turner*, No. 4:18–CV–48–GHD–DAS, 2019 WL 1460888, at *3 (N.D. Miss. Apr. 2, 2019). While estimates vary, Walker has filed more than 60 lawsuits since 2003. *See*, *e.g.*, *Walker v. Bingham, et al.*, 3:09–cv–692–

HTW–LRA (S.D. Miss. Nov. 17, 2009).[3] As a seasoned litigator incarcerated almost continuously since at least 2003, Walker has offered professional legal services through a company called Walker Legal Clinic LLC. *See In re Walker*, No. 18–50637–KMS, Doc. [1], at *2 (S.D. Miss. Apr. 2, 2018).[4] In pursuing these lawsuits, Walker has accumulated at least nine strikes. *See*, *e.g.*, *Hollaway*, 2018 WL 7283267, *2 n.5.

In his early lawsuits, Walker largely alleged common Section 1983 claims, such as conditions of confinement claims. *See*, *e.g.*, *Walker v. Magee, et al.*, No. 2:08–CV–235–KS–MTP (S.D. Miss. Oct. 28, 2008). However, by late 2008, Walker accumulated three strikes. *See*, *e.g.*, *Walker v. Clay*, No. 2:08–CV–183–KS–MTP, at *2 (S.D. Miss. Feb. 11, 2009). Thereafter, Walker's IFP status was revoked in several pre-2009 lawsuits; after Walker refused to pay the filing fee, these cases were later dismissed for failure to prosecute. *See*, *e.g.*, *Walker v. McCullum et al.*, No. 3:08–CV–452–DPJ–JCS (S.D. Miss. Feb. 17, 2009).[5] In revoking Walker's IFP status, the federal district courts explained the imminent danger requirement. *See*, *e.g.*, *Magee,* No. 2:08–CV–235–KS–MTP, Doc. [15], at *1–*2 (explaining Section 1915(g) and denying Walker IFP where he alleged conditions of confinement claims).

---

[3] *See*, *e.g.*, *Walker v. Hollaway*, No. 1:17–CV–244–LG–RHW, 2018 WL 7283267 (S.D. Miss. Nov. 7, 2018), *adopted*, No. 1:17–CV–244–LG–RHW, 2019 WL 507490 (S.D. Miss. Feb. 8, 2019); *Walker v. Bailey*, 270 So.3d 195 (Miss. Ct. App. 2018); *Walker v. Epps, et al.*, No. 2:09–CV–128–KS–MTP (S.D. Miss. July 14, 2009) (voluntary dismissal); *Walker v. United States of America, et al.*, No. 3:08–CV–1314–JAH–LSP (S.D. Cal. Dec. 3, 2008) (dismissed for failure to state a claim); Walker v. Cox, No. 4:10–CV–201–HTW–LRA (S.D. Miss. Dec. 29, 2010); *Walker v. Walker, et al.*, No. 5:09–CV–13–DCB–MTP (S.D. Miss. Feb. 9, 2009) (denying IFP status and dismissing case); *Walker v. Magee, et al.*, No. 2:08–CV–235–KS–MTP (S.D. Miss. Oct. 28, 2008) (same); *Walker v. Woodard, et al.*, No. 2:08–CV–233–KS–MTP (S.D. Miss. Oct. 27, 2008) (same); *Walker v. Clark, et al.*, No. 3:08–CV–647–WHB–LRA (S.D. Miss. Oct. 21, 2008) (same); *Walker v. Cole, et al.*, No. 2:08–CV–217–KS–MTP (S.D. Miss. Sept. 30, 2008) (same); *Walker, et al. v. Epps, et al.*, No. 2:08–CV–194–KS–MTP (S.D. Miss. Sept. 3, 2008) (same); *Walker v. Landcasta, et al.*, No. 2:08–CV–161–KS–MTP (S.D. Miss. Aug. 5, 2008) (same); *Walker v. King, et al.*, No. 3:08–CV–459–TSL–JCS (S.D. Miss. July 25, 2008); *Walker v. McCullum, et al.*, No. 3:08–CV–452–DPJ–JCS (S.D. Miss. July 22, 2008) (same); *Walker v. Jackson, et al.*, No. 5:08–CV–221–DCB–MTP (S.D. Miss. July 14, 2008) (dismissed as malicious).
[4] In a sworn bankruptcy filing, Walker claimed that Walker Legal Clinic LLC had up to $500,000 in assets and more than $1,000,000 in liabilities. *See In re Walker*, No. 18–50637–KMS, Doc. [1], at *6.
[5] *See also Walker v. Clay*, No. 2:08–cv–183–KS–MTP (S.D. Miss. Feb. 11, 2009) (revoking IFP where Walker claimed that prison official "mismailed" Walker's documents); *Walker v. Cole, et al.*, No. 2:08–CV–217–KS–MTP (S.D. Miss. Feb. 11, 2009) (revoking IFP where claimed denied probable cause hearing in state criminal case).

Around 2009, Walker began to routinely make shocking and disturbing allegations of sexual assault and sex slavery against a rotating cast of prison officials. *See*, *e.g.*, *Walker*, No. 5:09–CV–13–DCB–MTP, Doc. [1], at *4. These lawsuits follow a similar pattern: (i) shocking, vague allegations of sexual assault and sex slavery; (ii) against prison officials; (iii) a large but unknown number of prisoner-customers paying to have sex with Walker; (iv) assaults occurring in general prison locations at uncertain times on uncertain dates in sometimes uncertain years; (v) assaults or threats ongoing through the date of filing; and (vi) at least one prison official conspirator in Walker's prison on the date of filing. *See*, *e.g.*, *Walker v. Robinson, et al.*, 1:20-cv-00280-LG-RPM, Doc. [1] (S.D. Miss. Oct. 9, 2020); *Walker v. Jenkins*, *et al.*, No. 1:20–CV–197–HSO–RPM, Doc. [1] (S.D. Miss. June 12, 2020). At times, Walker's allegations are sufficient to pass through the traditional Section 1915(g) safety valve. *See*, *e.g.*, *Hunt*, No. 1:19–CV–246, Doc. [245], at *4–*5; *Jenkins*, *et al.*, No. 1:20–CV–197–HSO–RPM, Doc. [13], at *1. Other times, his allegations do not ring the bell. *See*, *e.g.*, *Walker v. McLeod*, 1:20–CV–199–HSO–JCG, Doc. [8], at *1 (S.D. Miss. Nov. 6, 2020); *Walker v. Reach*, 3:19–CV–794–DPJ–FKB, Doc. [10], at *1–*2 (S.D. Miss. Jan. 29, 2020). To date, Walker continues to allege that numerous prison officials are sexually assaulting him and pimping him out in a prison sex slavery ring. *See*, *e.g.*, *Turner*, 2019 WL 1460888, at *4; *Hollaway*, 2018 WL 7283267, at *1; *Walker v. Bailey*, 270 So.3d 195 (Miss. Ct. App. 2018); *Walker v. Banks, et al.*, No. 3:17–CV–995–CWR–FKB (S.D. Miss. Dec. 11, 2017).[6]

### B.  Vexatious Litigation

After IFP was granted here, Walker continued his common practice of "fil[ing] motions and pleadings at a blistering pace, overwhelming both the defendants and the courts in a frenzy of

---

[6] Indeed, Walker will sometimes make similarly extreme medical care claims. *See*, *e.g.*, *Walker v. Perry, et al.*, No. 3:19–CV–468–HTW–LRA (S.D. Miss. July 3, 2019); *Walker v. Waltzer, et al.*, No. 1:20–CV–198–LG–RPM (S.D. Miss. June 12, 2020).

largely meritless filings." *Turner*, 2019 WL 1460888 at *4. In the instant case, there have been

259 docket entries. Most are filings by Walker. In fact, Walker has filed more than 65 motions to

date. *See* Doc. [3, 6, 7, 10, 11, 16, 17, 37, 38, 39, 50, 55, 56, 63, 72, 73, 74, 75, 76, 77, 78, 82, 83,

84, 85, 86, 88, 103, 105, 106, 114, 115, 118, 125, 127, 135, 140, 155, 157, 161, 163, 164, 167,

168, 185, 186, 187, 188, 189, 190, 192, 195, 196, 198, 199, 200, 201, 208, 212, 214, 229, 230,

234, 248, 249, 255, 256, 259]. Most of Walker's motions were meritless and many motions were

patently frivolous. For example, Walker moved to review this Court's Order denying the

defendants' summary judgment motion without prejudice to enable Walker to complete discovery.

Doc. [229]. In addition, some of Walker's motions are repetitious, such as three motions seeking

to amend the case caption. Doc. [157, 163, 208]. To stem the tide of filings, the Court was

eventually compelled to expressly limit the number and timing of Walker's filings. *See*, *e.g.*, Doc.

[152]. In fact, it was necessary for the Court to set deadlines one-by-one to prevent Walker from

impairing a timely conclusion of proceedings with midnight filings. *See*, *e.g.*, Doc. [184].

Ultimately, the Court, including the district judge, has entered more than 35 Orders to make sense

of, and address, Walker's numerous filings. Doc. [9, 12, 13, 14, 34, 133, 134, 136, 137, 138, 139,

143, 144, 146, 147, 148, 149, 150, 151, 152, 160, 183, 204, 205, 232, 233, 235, 237, 238, 243,

245, 246, 247, 253, 254, 258].

### C.  Fraud on this Court

In addition to engaging in vexatious litigation, Walker has also committed a fraud on this

Court. In late-2020 and 2021, Walker filed four motions to amend the case caption to reflect his

purported new legal name, Kiriyama Zyreonia San Givonni. Doc. [140, 157, 163, 208]. In his first

motion, Walker only attached the first page of a Lafayette County Chancery Court ("chancery

court") order. Doc. [163], Ex. 1. Since Walker only provided the first page, this Court concluded

that Walker would be allowed to proceed as "Demario Dontez Walker a/k/a Kiriyama Zyreonia San Givonni." Doc. [143]. Thereafter, Walker filed three more motions to amend the case caption—and attached the full chancery court order. Doc. [157, 163, 208]. Relying heavily on the chancery court order, the Court hesitantly granted Walker's motions on May 5, 2021. *See Hunt*, 2021 WL 1792131, at *1. However, the chancery court rescinded its earlier order after discovering that Walker defrauded it to obtain a name change. Doc. [239], Ex. 1. Entering a third Order on this topic, the Court amended the case caption to reflect its initial styling, i.e. "Demario Dontez Walker." *Walker v. Hunt*, No. 1:19–CV–246–LG–RPM, 2021 WL 6048911 (S.D. Miss. Dec. 20, 2021). In short, Walker generated five motions, three Orders, and several motion responses to merely change the case caption with an order obtained through fraud.

### D. Fraud on Other Courts

After being defrauded, the Court reviewed several of Walker's past filings to determine whether this was an isolated incident. The Court paid special attention to Walker's out-of-state filings. The Court did not need to look far to uncover several instants in which Walker brazenly committed fraud on the federal courts. Most infamously, U.S. District Judge Eric N. Vitaliano dismissed one of Walker's lawsuits because Walker claimed, under penalty of perjury, that he was in New York in 2007 when he was actually imprisoned in Mississippi. *See Walker v. United States* [*New York County Clerks*], No. 08–CV–3025(ENV)(LB), 2008 WL 3851589, at *1 (E.D.N.Y. Aug. 18, 2008). Walker has successfully induced several federal courts, largely outside of Mississippi, to address the merits of his claims through fraudulent misrepresentations in his pleadings. *See*, *e.g.*, *Walker v. United States*, 298 F. App'x 383, 384 (5th Cir. 2008) (reviewing sworn complaint containing material misrepresentation that Walker only filed one previous

lawsuit). While the following examples are not exhaustive, they reflect that Walker has repeatedly defrauded the federal courts.

First, Walker has repeatedly made material misrepresentations in connection with his litigation history. In *Mobile County Clerks*, for example, Walker filed a sworn complaint in which he claimed that he never previously filed a lawsuit as an inmate. *See Walker v. Mobile County Clerks* [*Mobile County Clerks*], No. 1:09–CV–501–CG–C (S.D. Ala. Aug. 5, 2009). By August 5, 2009, Walker had already filed at least 15 lawsuits, *see*, *e.g.*, *Magee,* No. 2:08–CV–235–KS–MTP, Doc. [1],[7] and accumulated at least three strikes, *Walker v. Mississippi Parole Bd.*, 333 F. App'x 843 (5th Cir. 2009) (holding on June 16, 2009 that Walker accumulated at least three strikes).[8] Similarly, in *Walker v. United States of America, et al.* [*Texas County Clerks*], No. 4:08–CV–1555 (S.D. Tex. July 2, 2008), Walker claimed that he had only filed one previous lawsuit. However, like in *Mobile County Clerks*, Walker failed to disclose his extensive litigation history. Finally, in *Walker v. Las Vegas Co. Clerks, et al.*, [*Las Vegas Clerks*], Walker claimed, in a sworn November 18, 2008 complaint, that he never previously filed a lawsuit dismissed as frivolous, malicious, or for failing to state a claim. 2:08–CV–1602–RLH–LRL (D. Nev. Nov. 17, 2008). However, by the time of filing, Walker had at least two complaints dismissed on one of these grounds. *See*, *e.g.*, *New York County Clerks*, 2008 WL 3851589, at *1–*2 (dismissing lawsuit at frivolous); *Walker v. State of Mississippi, et al.*, No. 3:04–CV–140–LN (S.D. Miss. July 25, 2006) (dismissing lawsuit for failing to state a claim).

---

[7] *See*, *e.g.*, *Walker v. Epps, et al.*, No. 2:09–CV–128–KS–MTP (S.D. Miss. July 14, 2009) (voluntary dismissal); *Walker v. United States of America, et al.*, No. 3:08–CV–1314–JAH–LSP (S.D. Cal. Dec. 3, 2008) (dismissed for failure to state a claim); *Walker v. Walker, et al.*, No. 5:09–CV–13–DCB–MTP (S.D. Miss. Feb. 9, 2009) (denying IFP status and dismissing case); *Walker v. Magee, et al.*, No. 2:08–CV–235–KS–MTP (S.D. Miss. Oct. 28, 2008) (same); *Walker v. Woodard, et al.*, No. 2:08–CV–233–KS–MTP (S.D. Miss. Oct. 27, 2008) (same).

[8] *See also Walker v. United States of America, et al.*, No. 3:08–cv–1314–JAH–LSP (S.D. Cal. Dec. 3, 2008) (dismissal for failure to state a claim); *San Diego County Clerks*, No. 3:08–cv–1504–JLS–NLS (S.D. Cal. Nov. 25, 2008) (same); *Walker v. State of Mississippi, et al.*, No. 3:04–cv–140–LN (S.D. Miss. July 25, 2006) (same).

There are other examples. In *Mobile County Clerks*, Walker pleaded that he did not file any other lawsuits with nearly identical facts—i.e. Walker went into a local courthouse and was denied a same-sex marriage license. *Mobile County Clerks*, No. 1:09–CV–501–CG–C, Doc. [1], at *3–*4. By that time, Walker had already filed at least four other lawsuits asserting nearly identical claims. *See*, *e.g.*, *Texas County Clerks*, No. 4:08–CV–01555, Doc. [1], at *3; *San Diego County Clerks,* No. 3:08–CV–01504–JLS–NLS, Doc. [1], at *2; *New York County Clerks*, 2008 WL 3851589, at *1; *Las Vegas Clerks*, 2:08–CV–1602–RLH–LRL, Doc. [1], at *6. Indeed, in proceedings before the Fifth Circuit, Walker conceded that two Texas cases, nearly identical to his Alabama, Nevada, and California lawsuits, were actual duplicates. *Walker*, 298 F. App'x at 384. Additionally, Walker alleged that he was denied a marriage license in both California and Alabama on December 20, 2007; both complaints were sworn and filed under penalty of perjury. *Mobile County Clerks*, No. 1:09–CV–501–CG–C, Doc. [1], at *3–*4; *San Diego County Clerks,* No. 3:08–CV–01504–JLS–NLS, Doc. [1], at *3. Similarly, Walker claimed that he was denied a marriage license in San Diego while attending San Diego City College in January 2007, *San Diego County Clerks,* No. 3:08–CV–01504–JLS–NLS, Doc. [1], at *3, but Walker was imprisoned in Mississippi in January 2007, *Walker v. Caskey*, No. 2:10–CV–176–KS–MTP, 2013 WL 4777312, at *1–*2 (S.D. Miss. Sept. 5, 2013). Finally, Walker has utilized the above-mentioned chancery court order in other lawsuits to extract a similar name change. *See*, *e.g.*, *Jenkins*, *et al.*, No. 1:20–CV–197–HSO–RPM, Doc. [18], at *1; *Waltzer, et al.*, No. 1:20–CV–198–LG–RPM, Doc. [22].

## IV.   Sanctions in This Lawsuit

### A. Uncorroborated Allegations

Courts have repeatedly rebuked or threatened to sanction Walker. *See*, *e.g.*, *Hollaway*, 2018 WL 7283267, at *1–*2; *Walker v. State*, 35 So.3d 555, 560 (Miss. Ct. App. 2010). Nevertheless,

Walker continued to flood the courts with repetitive lawsuits and, where he can, endless filings. *See*, *e.g.*, *Turner*, 2019 WL 1460888, at \*1. In 2019, U.S. District Judge Davidson sanctioned Walker by dismissing his lawsuit as vexatious. *Id.* at \*4. Invoking the inherent judicial power to sanction, however, Judge Davidson also sanctioned Walker in future lawsuits by requiring Walker to provide corroborative documentary support for his allegations. *Ibid.* Unfortunately, Judge Davidson's sanction did not dissuade Walker from continuing his practice of inundating the courts with meritless lawsuits and filings in the Southern District of Mississippi. *See*, *e.g.*, *Robinson, et al.*, 1:20–CV–280–LG–RPM, Doc. [1]; *Jenkins*, *et al.*, No. 1:20–CV–197–HSO–RPM, Doc. [1]. It is well-established that the "[f]ederal courts have inherent powers necessary to achieve the orderly and expeditious disposition of their dockets." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) (citation omitted).[9] "'[A] well-acknowledged' inherent power of a court [is] to levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (citation omitted). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

In an Order to Show Cause dated January 7, 2022, this Court warned Walker that it planned to impose Judge Davidson's forward-looking sanction and gave Walker an opportunity to corroborate his Complaint allegations with documentary support. Doc. [247]. If Walker did not provide corroborating documentary support for his allegations, the Court warned, it would recommend revocation of Walker's IFP status. *Ibid.*[10] After being granted an extension, Walker filed multiple responses to the Court's Order to Show Cause on March 8, 2022. *See* Doc. [250, 251, 252]. In his

---

[9] Sanctions orders are reviewed under an abuse of discretion standard. *Nat. Gas Pipeline Co. of Am.*, 86 F.3d at 467.
[10] At his *Spears* hearing, Walker conceded that he was familiar with Judge Davidson's decision. Doc. [205], Ex. 1.

responses, Walker largely relies on earlier filings that, he claims, demonstrate corroborative documentary support for his allegations. *See* Doc. [250] (citing Doc. [8, 87, 89, 107, 110, 129, 131, 132, 170]). He also attached numerous exhibits. Doc. [255], Ex. 1.[11] The Court has considered Walker's responses and exhibits.

Most of Walker's filings only contain his own statements and are, therefore, nonresponsive. *See* Doc. [8, 107, 110, 129, 131]; [255], Ex. 1. Walker's Prison Rape Elimination Act ("PREA") filing reflects that, after an investigation, Walker's allegations were found to be unsubstantiated. Doc. [87]. Other filings simply contain prison policy and medical information packets. Doc. [89]; [255], Ex. 1. Finally, while Walker has submitted affidavits from fellow inmates, these affidavits merely contain the same vague and conclusory statements found in Walker's vague and conclusory Complaint. Doc. [170]; [255], Ex. 1. Cf. *Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 639 (5th Cir. 2002). No incident dates are given. No specific time ranges are given. No specific locations are identified. No specificity is given about whether the defendants acted together or separately. Instead, Walker merely provided "unsupported ... affidavit[s] setting forth ultimate or conclusory facts . . . ." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

In sum, Walker was ordered to present corroborative documentary support for his allegations. Doc. [247]. Walker was allowed to conduct—and received—extensive discovery in this case. *See*, *e.g.*, Doc. [174–82, 220–28]. Notwithstanding his numerous discovery requests and motions as well as the defendants' voluminous discovery production, Walker failed to provide *any* corroborative documentary support for his allegations. Instead, Walker merely filed his own vague statements, conclusory affidavits, and even a PREA investigative report finding his allegations to

---

[11] The Court has liberally construed Walker's attachments to his "motion for evidentiary hearing" as responsive to the Order to Show Cause. *See* Doc. [255], Ex. 1.

be *un*substantiated. Walker has failed to provide any corroborative documentary proof for his Complaint allegations and, therefore, the Court recommends that Walker's IFP status should be revoked as a sanction. *Turner*, 2019 WL 1460888, at *4.

## B. Fraud on the Court

Additionally, and in the alternative, Walker's IFP status should be revoked as a sanction for committing a fraud on the Court. "One of the most extreme methods by which one may tamper with the judicial process is fraud on the court." *Cheatam v. JCPenney Co.*, No. 1:16–CV–72–MAC, 2016 WL 7743028, at *5 (E.D. Tex. Nov. 10, 2016), *adopted*, No. 1:16–CV–72, 2017 WL 123806 (E.D. Tex. Jan. 12, 2017). Only the "most egregious conduct" such as "fabricat[ing] evidence" will constitute a fraud on the Court. *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)). "Across multiple jurisdictions, where a party is found to have fabricated evidence in an attempt to sway the court's decision making, such misconduct serves as clear and immediate grounds for dismissal of the offending party's action." *Cheatam*, 2016 WL 7743028, at *5 (collecting cases). Nevertheless, a sanction less severe than dismissal is usually appropriate when the fraud is unrelated to the ultimate merits of the lawsuit. *See*, *e.g.*, *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 69–70 (D.D.C. 2003).

Here, Walker committed a fraud on the chancery court to obtain a legal name change. Doc. [239], Ex. 1. He attached the fraudulently-obtained chancery court order to multiple motions to amend the case caption in this case. Doc. [140, 163, 208]. The chancery court order was Walker's only material support for his motions, *ibid.*, and the Court placed significant emphasis on that order, *Walker*, 2021 WL 1792131, at *1. For these reasons, Walker fabricated evidence to improperly influence the Court. *Rozier*, 573 F.2d at 1338.

12

While Walker's fraud was brazen, fashioning the appropriate sanction is a more difficult task. Arguably, Walker's extensive fraud deployed in furtherance of merely amending the case caption portends greater fraud for more significant issues. Likewise, Walker's conduct must be placed within the context of his litigation history. *See*, *e.g.*, *Johnese v. Jani-King, Inc.*, No. CIV.A. 3:06–CV–0533–D, 2008 WL 631237, at *3 (N.D. Tex. Mar. 3, 2008). Walker is also a pauper and monetary sanctions are unlikely to deter similar, future conduct. *See*, *e.g.*, *Derzack v. County of Allegheny, Pa.*, 173 F.R.D. 400, 416 (W.D. Pa. 1996), *aff'd*, 118 F.3d 1575 (3d Cir. 1997). Nevertheless, Walker's fraud arises in connection with a matter unrelated to the ultimate merits of his lawsuit. Cf. *Young*, 217 F.R.D. at 69–70. Since a monetary sanction would not deter Walker but his conduct does not warrant dismissal, the Court finds that revocation of his IFP status is a sufficiently severe penalty. It will present Walker with an opportunity to pursue his lawsuit but deter similar conduct in the future.

## V. <u>Walker's Complaints Moving Forward</u>

To review, despite being a seasoned litigator and receiving extensive discovery, Walker has not mustered any corroborative support for his claims. Walker has filed more than 60 largely meritless lawsuits. The threat and imposition of sanctions by other courts has not deterred Walker from continuing to file numerous meritless lawsuits. *See*, *e.g.*, *Hunt*, 2021 WL 6048911, at *2–*3 (reconsidering order granting name change); *McLeod*, 1:20–CV–199–HSO–JCG, Doc. [8], at *1 (filed after being sanctioned by Judge Davidson); *Reach*, 3:19–CV–794–DPJ–FKB, Doc. [10], at *1 (same). In fact, Walker has repeatedly made material misrepresentations under oath in federal court and committed a fraud on this Court after previously being sanctioned. *See*, *e.g.*, *Mobile County Clerks*, 1:09–cv–501–CG–C, Doc. [1], at *2.

As this case illustrates, "[t]he 'three strikes' provision of the Prison Litigation Reform Act has been insufficient in deterring [] Walker from filing meritless cases." *Turner*, 2019 WL 1460888, at *4. "[F]requent filers" like Walker abuse Section 1915(g) by "alleg[ing] that they are in imminent danger so they can avoid paying a filing fee." *Walker v. Bailey*, 270 So.3d 195, 200 (Miss. Ct. App. 2018) (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003)). Indeed, "[a]ll one need do is fabricate an imminent danger, swearing-match based . . . set of [vague] allegations" to receive a jury trial. *Barber v. U.S. Att'y Gen.*, 458 F. Supp. 2d 1378, 1380 n.4 (S.D. Ga. 2006). Courts have imposed a variety of sanctions to control this small group of imprisoned frequent filers. *See*, *e.g.*, *Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994) (upholding a lower court sanction requiring court preapproval of prisoner's lawsuits after prisoner filed 15 meritless lawsuits). *See also Brinson v. McKeeman*, 992 F. Supp. 897, 912 (W.D. Tex. 1997); *Siller v. Haas*, 21 F. App'x 270 (6th Cir. 2001); *Barber*, 458 F. Supp. 2d at 1380. Moving forward, Walker's filings must be strictly controlled—beyond Section 1915(g)—to prevent him from continuing to "engage[] in contumacious behavior that deliberately subverts" this Court's administration of its docket. *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 845 (S.D. Tex. 2016).

While the Court invokes its inherent power to sanction Walker, *Gelabert v. Lynaugh*, 894 F.2d 746, 747 (5th Cir. 1990), the Prison Litigation Reform Act ("PLRA") still provides a great reference point for fashioning an appropriate sanction.[12] Section 1915(g) serves two overarching, but competing, purposes. On one hand, Congress enacted the PLRA "with the principal purpose

---

[12] When faced with efforts to circumvent the three-strike rule, courts frequently turn to the PLRA's salutary purposes. *See*, *e.g.*, *Johnson v. McNeil*, 217 F.3d 298, 300–1 (5th Cir. 2000) (per curiam); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *Ray v. Lara*, 31 F.4th 692, 699 (9th Cir. 2022); *Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (en banc); *Pinson v. Fed. Bureau of Prisons*, No. 5:21–CV–322–SPC–PRL, 2022 WL 609593, at *1 (M.D. Fla. Feb. 7, 2022).

of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file suits." *Patton*, 136 F.3d at 464 (quotation omitted). By the same token, "Congress created a limited exception aimed at preventing future harms[,]" *Abdul-Akbar*, 239 F.3d at 315, which flows from "[o]ur legal system['s] . . . commit[ment] to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law[,]" *Jones v. Bock*, 549 U.S. 199, 203, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

Consistent with Judge Davidson's approach, Walker should be required to meet a heightened pleading standard before proceeding with any future lawsuit in this jurisdiction. First, Walker should be required to plead the "who, what, when, where, and how" in any future lawsuit. *United States ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365, 371 (5th Cir. 2017) (explaining heightened pleading standard of Fed. R. Civ. P. 9(b)). By requiring specifics, investigation of Walker's claims will be possible. Cf. *Barber*, 458 F. Supp. 2d at 1380 n.4. Walker's evident recreational litigation will be more difficult to undertake. *See*, *e.g.*, *Marrakush Soc. v. New Jersey State Police*, No. CIV A 09–2518(JBS), 2009 WL 2366132, at *36 (D.N.J. July 30, 2009) (quotation omitted) ("A 'recreational litigant' is 'one who engages in litigation as sport and files numerous complaints with little regard for substantive law or court rules.'"). His attempts to defraud the Court will be easier to detect. Cf. *Mobile County Clerks*, No. 1:09–CV–501–CG–C, Doc. [1], at *3–*4 (denied marriage license in Alabama courthouse on December 20, 2007); *San Diego County Clerks,* No. 3:08–CV–01504–JLS–NLS, Doc. [1], at *3 (same). Second, Walker must provide some specific documentary support for his claims, such as a *detailed* affidavit, objective medical records, or a favorable PREA investigation report. *Turner*, 2019 WL 1460888, at *4. For the reasons discussed above, Walker's own words, testimony, grievances, PREA complaints, and conclusory affidavits do not constitute documentary support. Nevertheless, strong corroborative documentary support,

15

such as relevant medical records reflecting verifiable injuries consistent with sexual assault, may help overcome less than ideal factual pleadings.

In short, this approach balances the PLRA's two competing concerns. On the one hand, this approach will increase the quality, and reduce the quantity, of Walker's lawsuits. It will also help conserve scarce judicial resources. On the other hand, the doors of the federal courts will remain open to Walker. He can pay the filing fee. Alternatively, he can meet the heightened pleading standard put forth above.

Finally, this sanction is consistent with other sanctions upheld by the Fifth Circuit in connection with arguably less egregious conduct. *See*, *e.g.*, *Murphy*, 26 F.3d at 543–44 (upholding sanction requiring court preapproval after prisoner filed 15 meritless lawsuits); *Ceasar v. Holt*, 245 F. App'x 396, 397 (5th Cir. 2007) (upholding court preapproval sanction where plaintiff filed five previous lawsuits summarily resolved in defendants' favor); *Mayfield v. Collins*, 918 F.2d 560, 562 (5th Cir. 1990) (upholding sanction imposed after litigant's thirty-eighth complaint).

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Walker be sanctioned by having his IFP status revoked and that Walker be given a reasonable amount of time to pay the filing fee or face dismissal. The Court further recommends that Walker be sanctioned to meet the above pleading requirements in future lawsuits.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court

need not consider frivolous, conclusive or general objections.  Such party shall file the objections

with the Clerk of the Court and serve the objections on the District Judge and on all other parties.

A party's failure to file such objections to the proposed findings, conclusions and recommendation

contained in this report shall bar that party from a de novo determination by the District Court.

Additionally, a party's failure to file written objections to the proposed findings, conclusions, and

recommendation contained in this report within fourteen (14) days after being served with a copy

shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed

factual findings and legal conclusions that have been accepted by the district court and for which

there is no written objection.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415,

1428–29 (5th Cir. 1996).

   **SO ORDERED**, this the 12th day of July 2022.


                              /s/ *Robert P. Myers, Jr.*
                              ROBERT P. MYERS, JR.
                              UNITED STATES MAGISTRATE JUDGE